**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **SCOTT A. B.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 21-CV-558-CDL |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the** | ) |
| **Social Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision denying benefits and **remands** the case for further proceedings.

**I.    Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

II.   **Background and Procedural History**

The plaintiff filed a Title II application for disability insurance benefits on January 25, 2019 and a Title XVI application for supplemental security income on September 11, 2019. (R. 13). He alleged a disability onset date of January 25, 2019. *See id*. The plaintiff alleged disability due to type 1 diabetes; neuropathy in the legs, feet, and hands; congestive heart failure; kidney disease; severe edema; and degenerative bone disease. (R. 57-58). He was 43 years old on the alleged onset date. (R. 57). The plaintiff has past work at a heavy exertion level as an apartment maintenance worker. (R. 71).

2

The plaintiff's application was denied on initial review. (*See* R. 57-76). On reconsideration, the Commissioner found the plaintiff was eligible for benefits under both Title II and Title XVI as of February 23, 2020. (R. 13; *see* R. 80-115). However, the agency denied benefits with respect to the period from January 25, 2019 to February 22, 2020. The plaintiff requested review of the agency's decision regarding the earlier period. (*See* R. 39, 139). An Administrative Law Judge (ALJ) held a hearing via telephone on April 19, 2021. (R. 13). The plaintiff and a vocational expert (VE) provided testimony. (R. 35-52). In a decision dated May 5, 2021, the ALJ found the plaintiff was disabled beginning on February 23, 2020, but not before then. (R. 24-25). The Appeals Council issued a decision on October 20, 2021 denying the plaintiff's request for review of the ALJ's decision. (R. 1-6). Following the Appeals Council's denial, the plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's May 5, 2021 decision under 42 U.S.C. § 405(g).

## III.   The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084.

At step one, the claimant must demonstrate that he is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined the plaintiff has not

3

engaged in substantial gainful activity since the alleged onset date of January 25, 2019. (R. 15-16).

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined that since the alleged onset date of January 25, 2019, the plaintiff has severe impairments of chronic kidney disease, diabetes mellitus, degenerative disc disease, congestive heart failure, and hypertension. (R. 16).

At step three, the ALJ determines whether the claimant's severe impairment or impairments is equivalent to one that is listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings). Here, the ALJ found that, prior to February 23, 2020, the plaintiff's physical and mental impairments did not meet or equal the criteria for any Listing, specifically noting Listings under Sections 1.00 (musculoskeletal system), 4.00 (cardiovascular system), 6.00 (genitourinary disorders), and 11.00 (neurological disorders). (R. 16).

However, beginning on February 23, 2020, the severity of the plaintiff's impairments met the criteria of Listing 6.03 (pertaining to chronic kidney disease, with chronic hemodialysis or peritoneal dialysis). (R. 25). The ALJ found persuasive the opinion on reconsideration by state agency medical consultant Evette Budrich, M.D., and Dr. Budrich's finding that the evidence established end-stage renal disease requiring dialysis as of February 23, 2020. (R. 25-26).

4

At step four, the claimant must show that his impairment or combination of impairments prevents him from performing work he has performed in the past. The ALJ first determines the claimant's residual functional capacity (RFC) based on all the relevant medical and other evidence. 20 C.F.R. § 404.1520(e); *see also Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ next determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023. Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

Here, the ALJ determined that prior to February 23, 2020, the plaintiff had the RFC

> to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The [plaintiff] could sit for six hours out of an eight hour day, and stand or walk a combined total of two hours out of an eight-hour day. The [plaintiff] could occasionally climb ramps or stairs, but should have avoided climbing ladders, ropes, or scaffolds. The [plaintiff] could occasionally balance, kneel, stoop, crouch, and crawl.

(R. 14-15). In explaining the RFC determination, the ALJ noted subjective statements in the record, objective medical evidence, and the Commissioner's administrative findings on initial review and reconsideration.

Citing the VE's testimony, the ALJ found that the plaintiff could not perform his past relevant work. (R. 23-24). However, the ALJ found that, prior to February 23, 2020, the plaintiff could perform alternative jobs existing in significant numbers in the national economy, including **clerical mailer** (sedentary exertion, unskilled, specific vocational preparation (SVP) level 2, DOT # 209.587-010, 16,000 jobs nationally); **nut sorter** (sedentary, unskilled, SVP 2, DOT # 521.687-086, 10,700 jobs nationally); and **document**

**preparer** (sedentary, unskilled, SVP 2, DOT # 249.587-018, 19,000 jobs nationally). (R. 24-25). As such, the ALJ found at step five that the plaintiff was not disabled during the period from January 25, 2019 until February 23, 2020.

## IV. Discussion

As noted *supra*, the Commissioner assessed the plaintiff as meeting Listing 6.03 as of February 23, 2020, when he began receiving kidney dialysis. However, the ALJ found that from his alleged onset date of January 25, 2019 until then, the plaintiff retained an RFC for sedentary work with certain postural limitations.

The plaintiff points to record evidence that he was hospitalized for various impairments throughout that time period. The plaintiff testified that he was fired as a result of his hospitalizations and limitations from his impairments. He contends that the ALJ failed to apply the proper legal framework in reaching the RFC determination for the period prior to February 23, 2020 and in finding that the plaintiff could have performed substantial gainful activity during that period.

The record contains evidence of multiple periods of hospitalization, many lasting several days, throughout the period in question. Indeed, the ALJ's decision recounts evidence of at least half a dozen hospitalizations and/or periods of in-patient acute care treatment throughout 2019. As set forth in the ALJ's decision, on January 25, 2019, the plaintiff was admitted to St. Francis Hospital with "an acute kidney injury and hyperglycemic crisis." (R. 18). Chest imaging showed "multiple irregular masses . . . in addition to pleural effusion," and transudate fluid was observed. *Id*. Lab work revealed infective endocarditis, and the plaintiff was transferred to a long-term acute care facility

6

for intravenous antibiotics.

After a period of hospitalization and in-patient acute care treatment, the plaintiff tried to return to work, according to his hearing testimony. However, the plaintiff testified that shortly thereafter, he was let go as a result of limitations arising from his impairments. (R. 45; *see* R. 20). Following a course of in-patient treatment that ended in March 2019, the plaintiff attended follow-up appointments with his primary care physician and established treatment with a cardiologist. (R. 19).

In July 2019, the plaintiff was admitted to a hospital for "acute kidney injury, chronic kidney disease stage III, hypertension and history of chronic diastolic congestive heart failure." *Id*. His treating providers further noted "severe protein-calorie malnutrition related to unintentional weight loss evidenced by an 8.4 percent weight loss in one month, moderate muscle wasting[,] and decreased functional status." *Id*. After being discharged, the plaintiff continued to attend follow-up appointments with his primary care physician and cardiologist. (R. 20).

In August 2019, the plaintiff presented to the emergency room with edema and fluid overload. He was treated in-patient for eight days until his swelling and his acute kidney injury improved and he felt stronger. (R. 791). His treating providers noted that he had "generalized malaise[,] probably due to kidney disease." (R. 20).

A few days later, the plaintiff returned to the hospital with nausea, vomiting, and diarrhea, potentially related to recent medication changes. He "appeared chronically ill but nontoxic" on admission. *Id*. The plaintiff reported compliance with his medication, although "he later admitted taking diuretics once a day instead of twice a day." *Id*. After

7

reviewing lab test results, a clinician noted "evidence of improved congestive heart failure, suggesting he no longer needed diuretics." *Id*. The ALJ found no evidence that the plaintiff followed up with a cardiologist as instructed during his August 2019 hospitalization. (R. 22).

In November 2019, the plaintiff returned to the hospital "in acute renal failure, hyperglycemic and in mild ketoacidosis." *Id*. According to the ALJ's decision, "[e]vidence suggested non-compliance with hypertension and diabetes medication." *Id*. The plaintiff was given an intravenous calcium channel blocker for uncontrolled hypertension. *Id*. After lab work revealed an elevated A1C of 11.2, he was provided with "extensive education on diet and management of diabetes." *Id*.

He followed up with his primary care provider the following week, who noted elevated blood pressure but otherwise unremarkable findings. *Id*. However, later in November, the plaintiff was again admitted for stroke-like symptoms, including hypertensive urgency, nausea, headache, and vomiting. (R. 21). He was observed to be "obviously uncomfortable" in the emergency room and had trace weakness of the left arm on grip strength and elbow extension. *Id*. The plaintiff was discharged, but was noted to be at "a high risk for readmission." *Id*.

In December 2019, the plaintiff was again hospitalized for hypertensive urgency and other symptoms. *Id*. His systolic blood pressure was over 200, and he was put on an intravenous calcium channel blocker and began oral medications. The plaintiff was discharged after two days with improved blood pressure and assessment of stage IV chronic kidney disease. *Id*.

8

In assessing the intensity and persistence of a claimant's pain, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[1]

---

[1] While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna* and *Keyes-Zachary*. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").

In evaluating pain, the Commissioner considers factors including:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of . . . pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c), 416.929(c); *see also Keyes-Zachary*, 695 F.3d at 1167; *Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed).

Consistency determinations "are peculiarly the province of the finder of fact." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *see also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) (ALJ's evaluation of symptom allegations "warrant particular deference"). However, the ALJ must explain "the link between the evidence and" consistency determination. *Kepler*, 68 F.3d at 391; *see also* 20 C.F.R. § 404.1529 (ALJ must provide "specific reasons . . . supported by the evidence in the case record").

Here, the ALJ's decision acknowledged that,

> [a]s of January 2019, [the plaintiff] described difficulty with activities of daily living. Swelling in his legs made it difficult to walk and impossible to go down stairs. He could get up and brush his teeth, but could not do much else.
>
> . . .
>
> [The plaintiff] testified that he had not driven in five weeks due to an injury to his leg and back. Previously, he denied driving in 2019. He was living with family. He used to enjoy working with plastic models but the neuropathy in his hands prevented that activity

(R. 18). The ALJ's decision noted evidence that, on various occasions, the plaintiff did not fully follow his prescribed treatment, which included prescription medications, weight monitoring, and diet. The decision stated that,

> [w]hile the record reveals a history of lumbar degenerative disc disease and multiple inpatient hospitalizations for serious illnesses related to the claimant's diabetes, kidney disease, hypertension and congestive heart failure, the record also contains evidence of non-compliance.

(R. 18). The ALJ's decision concluded that the plaintiff's subjective complaints were not fully supported by the record for the period prior to February 23, 2020. *Id*.

The decision also noted that evidence indicated amphetamines and cannabis usage when the plaintiff was admitted to the hospital in January 2019, and that prior records from pain management showed that he had tested positive for amphetamines in August 2018. (R. 21). Discounting the plaintiff's testimony that his congestive heart failure caused swelling in his feet and fatigue requiring him to lie down about half the day, the ALJ noted instances of non-compliance with treatment recommendations, noting that a "recent urine drug screen was negative [for] amphetamines," but that the plaintiff "was found with a substance, which [he] apparently was going to sniff." (R. 22).

Under Social Security Ruling (SSR) 16-3p, the ALJ may consider a claimant's failure to follow prescribed treatment, among other factors, in evaluating the consistency of complaints. However, the ruling provides that the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p.[2] Toward that end, the Commissioner "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." *Id*. Possible reasons an ALJ should

---

[2] The plaintiff's briefing argues that the ALJ was required to follow SSR 18-3p. As the Commissioner correctly notes in its response, SSR 18-3p applies only when an ALJ has determined a claimant has a disabling impairment but finds that benefits should be denied because the claimant has refused to follow prescribed treatment. As such, SSR 18-3p does not govern the ALJ's decision here. Nonetheless, the Court finds that plaintiff has not waived the issues discussed herein, as the plaintiff's briefing argued that the ALJ failed to assess whether the plaintiff had good cause for not following the prescribed treatment.

consider include, for example, that the claimant cannot afford treatment and lack access to free or low-cost medical services, the claimant experiences side effects that are less tolerable than the symptoms being treated with medication, or due to mental limitations, the claimant may not understand the need for consistent treatment. *Id*.

Here, while the ALJ's decision focused extensively on evidence of noncompliance with various treatment recommendations, the decision utterly failed to address the plaintiff's reasons for any alleged non-compliance. Nor did the ALJ attempt to develop the record by inquiring as to the plaintiff's reasons, despite having the opportunity to take the plaintiff's testimony at the hearing. Moreover, the ALJ's decision did not explain why evidence of some instances of non-compliance outweighed evidence that, in other instances, the plaintiff attended recommended follow-up and specialized medical appointments and/or was compliant with his prescribed medications. *See* SSR 16-3p, at *9 ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.").

As such, the decision did not adequately explain why the ALJ discounted the plaintiff's subjective statements. Rather, the ALJ's consistency determination appears to be an improper "conclusion in the guise of findings." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (quotation omitted). This error warrants remand for the ALJ to reconsider his consistency determination and provide "specific reasons for the weight given to the [plaintiff's] symptoms" that are "consistent with and supported by the evidence, and

. . . clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10; *see also White v. Barnhart,* 287 F.3d 903, 908 (10th Cir. 2001); *Kepler v. Chater,* 68 F.3d 387, 390-91 (10th Cir. 1995).

On remand, the ALJ should specifically consider evidence of the plaintiff's alleged reasons for not following or only partially following all of his treatment regimen throughout the period in question. The ALJ should develop the record further as to these reasons, if appropriate, and should review and re-evaluate the entire record in light of such reasons. Finally, consistent with SSR 16-3p, must adequately "explain how [he] considered the [claimant's] reasons in [his] evaluation of . . . symptoms," considering the record as a whole. *Id*.

## V.     Conclusion

For the reasons set forth above, the Court finds the ALJ's RFC determination is legally erroneous and is not supported by substantial evidence. Therefore, the decision of the Commissioner finding Plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

ORDERED this 30th day of March, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge